The fourth district appellate court of the state of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon. This is case number 4-23-1185, People v. Johnson. Counsel, at this point, could we have appearances? First, for the appellant. Your Honor, my name is Maximillian Hughes-Zaner, and I represent Taisha Johnson in this matter. All right, thank you. And for the appellate? Hunter Guttin for the state, Your Honor. Thank you. Thank you. Mr. Hughes-Zaner, you may proceed with your argument. Thank you, Your Honor. May it please the court. The sole issue in this matter is whether the officer had reasonable suspicion to stop Mrs. Johnson when the stop was based on a third-party tip. This case involves a vague and unreliable tip made by someone with a grudge against Mrs. Johnson, which the trial court found was enough to make her the target of government surveillance and intrusion. The tipster made only a bare assertion that Mrs. Johnson was wasted, and the context does not allow the inference that the tipster actually witnessed a crime. Mr. Hughes-Zaner, I'm going to interrupt you very early on in your argument. I wish to ask you, in regards to the evidence presented at the hearing, um, what evidence was presented regarding, uh, the report, uh, that was received? If you could be, uh, uh, just very detailed, uh, but the report of a possible drunk driver, what was the evidence at the hearing? So, the evidence at the hearing came from two different sources. The first was the officer's testimony. Um, the officer testified about two dispatches that she received. The first informed her about a possible intoxicated driver, um, and had a description of the car, as well as the occupants, and then a general location. The second dispatch that she received a few minutes later, um, was an updated location. And then the defense's motion to suppress contained some information, as well, specifically the name of the tipster, um, and the fact that he claimed that Mrs. Johnson was wasted, and that she had made fun of him for having a DUI previously. Well, is that evidence that's, is that, uh, which is contained in a motion, uh, evidence that the trial court could consider? Your Honor, in this case, the state and the defense essentially stipulated to the facts, um, listed in the motion to suppress. Both used it in their argument, um, and the court considered the information contained. Well, what do you mean by essentially stipulated? Uh, neither the defense nor the state, um, acted as if the defense's motion to suppress was some argument. Both used it to argue, um, their sides at the motion to suppress. Well, counsel, that doesn't really qualify, uh, as evidence, does it? Your Honor, it is not evidence. The way that the, uh, parties and the court used the facts within the motion to suppress is the reason why, um, I stated that this was essentially stipulated to. Well, was it proper, uh, if the court did rely on, uh, uh, factual matters, uh, that were not in evidence, was it proper for the court to do so? Um, I think that that question, um, sort of emphasizes my point in this case, which is we don't have the facts necessary. We don't have the transcript of the dispatch. We don't, we never got information about what this tipster said, and that's a problem here. It's why the tip cannot be seen as reliable, because we don't have the facts to draw reasonable inferences that what the tipster claimed was true. Well, counsel, uh, it wasn't just, uh, uh, the state that, uh, included, uh, matters that were, uh, uh, contained in the motion. In your brief, you also, uh, indicated, uh, or, uh, I believe, uh, you set forth information that was not in evidence. So just as a preliminary matter before, you know, we get to, uh, talking about the process here in the motion, uh, the, uh, the hearing itself in terms of the evidence presented, uh, uh, that's in the record relating to, uh, the drunk, possible drunk driver. Is it accurate to say that the only evidence was a description of a possible drunk driver and nothing more? That is correct. Okay, please proceed. So the state's claim here that the tip is reliable is based entirely on speculation and imagination. If this is enough to justify a stop, then anyone can be subject to governmental overreach. The tip here is unreliable because third-party tips must be reliable in their assertion of illegality and not just in the tendency to identify a person. Beyond stating that Mrs. Johnson was wasted, the tipster was silent as to what informed that assertion. And as your honor mentioned, the dispatcher only told the officer that there is a possible intoxicated driver. The tip does not describe any interaction between tipster and Johnson, does not contain any observation of Johnson drinking or acting drunk, stumbling around, slurring her words, or smelling of alcohol. The tip also does not describe any erratic driving on Johnson's behalf, swerving in the parking lot. Isn't it true that a lay witness, the law establishes a lay witness can give an opinion on intoxication? Yes, your honor. And in fact, one of the instructive cases in this matter is People versus Ewing, which says exactly that. However... Go ahead. However, the context with which the court made that determination has to do with the specific facts of Ewing. In Ewing, this was a situation with implied close proximity. So the reliability of the tip stemmed from reasonable inferences that could be made based on the circumstances. So in Ewing, it also, the tipster only made a bare assertion of criminal behavior that the defendant was intoxicated. But the circumstances allowed for reasonable inferences that established the reliability of that claim. The tipster was in close proximity with the defendant and interacted with him when he dropped his dog off at the veterinary clinic. Well, we know there was some of proximity because there was an observation of the person either driving or getting into their car. There was updated information. How deep do we have to go beyond the opinion about, I think that person was intoxicated before the authorities are allowed to rely on that in making a judgment when they gather later information? Your Honor, here, it's not that the tipster needs to go into an insane amount of detail. It has to do with whether that tip can be relied upon. And the things that allow for that tip to be relied upon are the reasonable... Is that a great amount of detail? But that sounds like you just, the snake eating its tail. It seems like you went back to, well, if we had that greater detail, then we would be able to make that inference. It's about the circumstances of the tip. So here we have a location, which is an apartment complex. And specifically, Mrs. Johnson is in the parking lot of the apartment complex. We have no idea if tipster lived there, if he worked there, if he was just passing through. Would it matter? All we know is he observed. He observed her, he observed the vehicle. He drew a conclusion, which on the stand, we might want to get more information from him about what that conclusion was based on. But I don't know if that's what we need to go into in this context. So I have a question for you about this. The trial court here commendably found some case law from this court concerning the evaluation of the issue before it, and specifically discussed the Schaefer case, the Ewing case, and talked about the Schaefer factors and found, denied the motion to suppress based upon its analysis of the Schaefer factors. Did the trial court err in any fashion in identifying the Schaefer factors and talking about how they applied in this case? Yes, your honor. My argument is that the trial court conflated the analyses of the four Schaefer factors, and in particular, the third and fourth, which I argue were not met here. And this is where that reliability stems from third party tips. In particular, those last two, whether the tip is based on contemporaneous eyewitness observations, and whether the tip is sufficiently detailed, permit the reasoning. Well, pausing you right there, what reason is there to believe this was not based upon a personal observation by the tipster of the behavior in question? Your honor, it is contemporaneous eyewitness observation of the alleged criminal behavior. We don't have that here. We have contemporaneous descriptions of the subject of the tip, Mrs. Johnson, but we don't have any allegation of, or we don't have any detail or circumstance where we can draw the reasonable inference that this tipster actually witnessed a crime. That is where the reliability in the assertion of illegality of a tip, which is required, comes from. And in this case, we don't have it because there are simply not enough facts to derive that kind of inference from what the tipster said. Does each of the four factors have to be satisfied, or are they four factors that should be considered and weighed? Your honor, these are four factors that should be considered. They don't necessarily need to be satisfied. However, it is important that the tip is reliable both in its tendency to identify someone and in its assertion of illegality. The third and fourth factors specifically relate to the assertion of illegality. And the whole question here is whether the officer had reasonable suspicion. Reasonable suspicion to do what? Or reasonable suspicion of what? That criminal action occurred or is occurring or is about to occur. That's what the reasonable suspicion is about. So if we don't have reliability with regard to that from the tip, then there is no reasonable suspicion. That's why there's an issue when the third and fourth factors can't be found here, because that specifically relates to the illegality. And that specifically relates to the reasonable suspicion. Is this an anonymous tip or a non-anonymous tip? This was a non-anonymous tip. This tipster, but again, this information comes from the defense's motion to suppress. If, as I stated earlier, the parties stipulated to that, that can come in. The interesting piece, the interesting distinction here is that in Ewing, the dispatcher testified and the audio of the tip was played in the court. That is not a benefit that we have here. That wouldn't have been known to the officer at the time, correct? Which piece, Your Honor? Well, all he knows is what dispatch tells him. If there's more information on that phone call than he got through dispatch, is that problematic for us to be assessing probable cause based on information that was unknown to the police officer? Your Honor, the officer in this case did not immediately pull over Ms. Johnson. So, there must have been some sort of skepticism that she had with regard to the dispatch, and she attempted to corroborate the tip. That wasn't my question. My question was, is it proper for us to consider information that the officer didn't know in assessing whether the officer had probable cause? It is appropriate to use the information that dispatch had, because that they were a part of, that is collective knowledge there. However, we don't know what the dispatch had. We can't use that information because it did not come out. All we have is what the officer testified to, and again, what the defense mentioned in their motion to suppress. That's it. Is it your argument that it's insufficient that the caller reported the driver she observed in this car is drunk or intoxicated because the caller was required to explain the basis for her opinion that the driver was drunk or intoxicated? Your Honor, that is one way that reliability can be found. Another way is purely from the circumstances of the tip. Well, for instance, let's be more clear. If the caller said, reported this drunk driver got in the car with some kids, and she was stumbling around and acting drunk like she could hardly walk as she got into the car, would that have been enough? Yes, Your Honor. That kind of detail is required in order to make the tip legitimate before the police can rely on it? Your Honor, it's not required. If in the example I gave, that tip would be fine. In this particular case, the tips they used the term intoxicated, it just seems to me the only difference is that there was no description by the caller regarding the basis of her opinion. And what I'm wondering is, where is that requirement coming from? Why isn't it sufficient for a caller to say this guy was drunk and got in the car with a bunch of kids and drove off? Your Honor, that's not what we have here, though. Humor me. Let's assume that's what we have. Why wouldn't that be sufficient? I believe I said that that would be sufficient because there is enough fact that we can draw the reasonable inference that this tipster witnessed the subject of their tip committing a crime. In Schaefer and Ewing, we have very bare assertions as well. We have, this person was intoxicated, didn't describe what made the tipster believe that that person was intoxicated, but the court could draw reasonable inferences from the circumstances that would allow for, or that would support the reliability of the tipster's statements. We don't have that here. So, it's not required that the tipster give a more detailed explanation of why they believe what they are concluding or what they are asserting. But if they don't do that, and we also cannot draw reasonable inferences from what we know about the context, then there is no reliability. So, Mr. Hughes-Zaner, I want to go back to what I was initially asking you about because that's the basis from which everything else follows, that being the evidence that was presented to the trial court in regards to the tip. The tip was a possible drunk driver and children in the vehicle. Is that right? That is correct. Is there any evidence in the record that establishes that the tipster saw the individual outside of the driving context? No, Your Honor, other than the fact that she was in a parking lot. Presumably, she got in the car at some point. Well, and this is, I want to be very pointed in questioning. Did the evidence establish that the tipster saw the individual get into a vehicle? No, Your Honor. Okay. So, what we have is we've got the tip that the individual was a possible drunk driver. I should just say possible drunk driver with children in the vehicle. Is that it? That is correct, as well as the location. In Ewing and in Schaefer, the tipster had actually had face-to-face contact with the driver. Is that right? In Ewing, it was the individual that brought his dog into the vet clinic and was, according to the tipster, drunk. Is that right? That's correct. And in Schaefer, it's a Wendy's who encountered the defendant at the drive-up window. The defendant was causing a disturbance. The tipster had face-to-face contact with the defendant. Is that right? That is correct. Okay. In this case, do we have evidence of face-to-face contact between the tipster and the defendant? We do not. Okay. Does that bear on the fourth Schaefer factor? Yes, it does. Okay. All right. Thank you. Before your time runs out, I do have a question. Are we assessing this separately about what the officer observed and whether that gives rise to probable cause or a reason for a terrorist act, and then separately analyzing the tip, or are we looking at them together as a totality and saying, is all of that information a basis to have a terrorist act? Your Honor, in this case, we are looking at all of it, which is why my argument is that the tip here is unreliable and the officer's observations couldn't justify the stop. And the trial court heard the testimony from the officer and is in best position to make credibility determinations. He determined that the officer's observations were not enough. If there are no further questions, I will reserve any further remarks for rebuttal. All right. Thank you. You'll have time in rebuttal. Mr. Gutton, you may proceed. May it please the court, counsel, my name is Connor Gutton and I represent the state in this matter. I want to start out by saying that emergency calls to the police, which defendant admitted in their brief, the emergency call was made to the police, have less or are viewed as more reliable than an anonymous tip. So in that regard, this tip should not be regarded as an anonymous tip. Regarding the third and fourth Schaefer factors, it is true that the evidence presented at the hearing was sparse. There was not, as there were in other cases in Schaefer, there was not a direct face-to-face contact established on the record between the tipster and defendant. However, I do think that there, sorry, may I continue? Please. However, I do think that there was a sufficient, there's sufficient facts to support the inference that there was a contemporaneous observation. In his brief, I believe defendant admitted that it can be reasonably assumed that the tipster was a resident of the building in which the defendant was working. This would mean that there would be ample time to potentially observe defendant. We do not know necessarily what the inciting incident was, but we do know that- Mr. Gatton, may I interrupt you for a moment? And I want to ask you the same question that I asked Mr. Hughes-Zaner. And that is, what does the record contain in the way of evidence presented to the court regarding the tip itself? Okay. So I believe as Mr. Hughes-Zaner said, the first dispatch was concerning the color of the car, the make and model, the partial license plate, and the fact that there were children in the car. I believe the second tip was that the officer received another dispatch informing her that the car was still in the area or returned to the area was her testimony. However, and I apologize if this is too attenuated, but at the motion to reconsider sentence, I believe both the state and defense counsel stated that the video had an audio component. In my review of the record, I was unable to get the audio component to come through when I was reviewing the video. However, defense counsel stated that the dispatch said that defendant was leaving the parking lot now, like at that moment. That to me implies that the tipster was giving that information and that he observed the defendant drive off. She's leaving now. I am watching her leave now. It is not like affirmatively established on the record, but that's what the reasonable inference to me is, is that I'm leaving now means that she is driving away in her car. There's also support for this in the amount of time that elapsed between the tip and the officer getting behind the car. I believe the judge said it was only like two or three minutes of time. I would say that even if the third and fourth shaper factors were not met, I believe that the officer's observation when taken together with the tip is sufficient to support a Terry stop in this matter. When we're doing Terry stops, we have to look at the totality of the circumstances and whether or not it had been given a common sense evaluation of the facts. It would lead the officer to believe that an offense had been committed. When there is a tip of a drunk driver, the amount of cooperation required for the tip is lessened, according to Schaefer. When the officer observed defendant drive, at one point she observed her pull off to the side of the road. She did not, the defendant did not get out of the car. She did not put on her hazard lights. There was no obstacle in the road that otherwise would have caused her to take this maneuver. She then waited for over a minute, which the officer found odd. She then pulled off and continued driving. At one point, when she came across a small pit of gravel, she swerved to the left and the officer was able to traverse that gravel without having to swerve and just drove right over it. Later on, she came to a stop sign and the officer said she observed her stop over the white line. This in and of itself would be sufficient to effectuate a Terry stop, the stop itself. The judge did say that it was a close call and in doing so, this shows that like the stop, it's, or the officer's observation, officers are, excuse me, officers are permitted to make mistakes of fact in, when they perform a Terry stop. And so even if the officer was mistaken about the positioning of the car, which based on my review of the video, I do not believe she was, that's also a factor. And then to finish it off, the defendant also swerved one more time to the left before pulling into her driveway. I think we take all of these instances together with the lower degree of corroboration necessary, since we have the tip of the intoxicated driver, I think that when we take all these factors together, there was reasonable articulable suspicion to effectuate a Terry stop. But trial in evaluating the defendant's driving focused on her reasoning for why she drove the way she did. She cited that she swerved, she always swerved around that pit of gravel because the gravel got in her tires. That's not relevant. We have to look at what the officer's observations are. And from the officer's point of view, all these swerves and the stop in the side of the road could be consistent with a drunk driver. Based on those factors, I think there was enough to conclude that a Terry stop was warranted, regardless of the Schaefer factors. Counsel, I just want to make sure I understand. There's some comments about what's in the record, what the trial court heard, whether there was audio that we're not able to hear. I just want to be 100% clear on this. Is there anything in the record that the trial court had available to it that we don't have available to us on appeal? I believe, as I explained previously, I believe that there was, based on the description that the motion to rehear, that there was audio of the dispatches that I did not have access to. I don't know if that was potentially a technological issue that I did not resolve or what that potentially was. I apologize if it was on my end. But that was available to the trial court? Based on my reading of the record, it appears that both parties agreed that there was sound. They could hear the dispatches. I could not hear them. And again, I apologize if that was me. Understood. Thank you. Did the court make any reference to the audio tape indicating that it had listened to any audio? I believe they did have the motion to rehear. I believe that the state did say that part of the audio was part of the record. And then I believe that the defense attorney also indicated that, yeah, she said that the dispatch said that she was leaving the parking lot now. Going to Justice Harris's question about the actual evidence before the court, in defendant's brief, he conceded that the tipster used the police emergency line and defendant also in a motion to suppress said that the caller utilized 9-1-1 and identified himself by name. That's certainly interesting information. Was that in fact stipulated to or presented to the court? Was there any evidence on it or is this just something that appears in the brief of the defendant on appeal on the motion to suppress? I believe the sourcing of that was merely the motion to suppress and the defendant's brief, but I nonetheless thought that it should be brought to the court's attention. Well, this is a strange situation. Why wouldn't the state at trial ask for a stipulation to these facts that appear in motion so that we don't have a situation where we're just dealing with a pleading, but we're dealing with evidence? I'm not sure why they did not take that course of action, your honor. So the basis of the phone call is the tipster said the person was intoxicated. That was it? He said that. Yes, she was. Yes, that's correct. Received a dispatch of intoxicated driver with children in the car near the River Road Apartments. Correct. How long after the first call was the second call made? I believe it was like I believe it was two to three minutes. I think so. And what was the substance of the second call? Again, and I apologize for this discrepancy. According to the officer's testimony, it was that the car was still in the area or had returned to the area. But then according to again, the motion or in the on the hearing at the rehearing, I apologize. It was that, quote, she was leaving the parking lot now was the dispatch. Excuse me. You may continue. Oh, is there any other further questions from the court? If not, I will yield the rest of my time in this matter. All right. Thank you, Mr. Gettin. I don't see any other questions. Mr. Hughes, I know rebuttal. Yes, your honor. So as Mr. Gettin stated, 911 calls the police can be given more reliability. That information as Justice Harris discussed came this motion to suppress. If it is able to be used and we have that information along with the bias on the behalf of the tipster, which although 911 calls are given this presumed reliability, the reason for that is because usually there is no malicious hidden agenda behind. Whereas in this case, the tipster indicated that there is a motive to potentially lie to exaggerate. And so the reliability that comes from the fact that the tipster called 911 is eliminated by that piece alone. In addition, there are not sufficient facts in this case to determine that this call was reliable and so or that this tip was reliable. And so the officer's actions up until she stopped Mrs. Johnson without reasonable suspicion were very proper. She attempted to corroborate the information. And the third Schaefer factor, this contemporaneous eyewitness observation is of criminal behavior. If we cannot reasonably infer that there was that tipster actually witnessed a crime, then there is no contemporaneous eyewitness observation of criminal behavior. So one of the other cases on this issue, which this court has addressed, written about other than Schaefer and Ewing was people versus Hansen. In Hansen, that's the case where the report came in from a juvenile who called 911 to report a truck doing donuts in the road and identify the truck as a single cab, etc. Are you familiar with that case? Yes. Okay. So the inference is maybe that was reckless driving or drunk driving or who knows what it was. But as opposed to Schaefer and Ewing, that was a case where the tipster did not have any interaction with the defendant, where the tipster just saw the defendant from a distance and saw the defendant's behavior in the car. And this court said that was adequate given the prior cases in Schaefer and Ewing to justify the stop and those factors were met. Why wouldn't the same analysis apply here? Your Honor, the distinction in that case is the fact that the tipster witnessed and described actions that are attributable to intoxicated or erratic driving. In this case, we just have the bare assertion of intoxication, which is why Schaefer and Ewing are a bit more instructive here because in those cases, we just had a bare assertion. So I want to be clear, as I said before, in this case, the tipster said, I saw him stumbling as he tried to get in the car to drive off with kids in the car. That would have been good enough to explain the tipster's conclusion that the driver was intoxicated? That presumes an interaction between the two, so yes. Well, there's no interaction, he's just observing them from somewhere. Your Honor, what I mean by interaction is the basis, I'm using it incorrectly, but the basis of the tipster's allegation of criminality. In that case, I saw them stumbling around, they slurred their words. Well, he's the one who said the guy was drunk and the 911 operator could have said, why do you think that? And got an explanation, that would have been enough, I think. Is that correct? Your Honor, yes, because of the doctrine of implied knowledge, I believe it's called. Collective knowledge. So the tipster reporting a drunk driver, absent a sufficient discussion to justify that conclusion, in your opinion, it's not enough? There are not enough facts here to justify the stop of Mrs. Johnson. This case, had there been some further explanation such as, I saw him stumbling, he got in the car, et cetera, would that be enough? All the other factors then would have been met? Yes, Your Honor, that allows for reasonable inferences that the tipster actually witnessed some crime or some crime about to occur. This person is drunk and getting into their car. What about the fact that a second call was made? Does that indicate serious concern in the past part of the tipster, or are you thinking that that's just a bad call to cause problems for the defendant? Well, Your Honor, that's the problem here, is we can't reasonably infer that it was concern of the tipster because there is another equally certain inference that we can make from this, because of what the tipster said. So we cannot- I'm not sure I understand. What is the other inference we can draw? Oh, what you just mentioned. Are you suggesting some bias on behalf of the tipster? What is the basis and the evidence for that? Well, the only basis exists within the defense's motion to suppress, which stated that Ms. Johnson made fun of the tipster for having previously had a DUI. And again- But evidence or not, that's clearly out of bounds because the law enforcement didn't know that. Well, that's where the doctrine of collective knowledge comes in. Collective among officers. Is there evidence the dispatcher knew that? Well, in the defense's motion to suppress, these were the tipster's words that Ms. Johnson was wasted and that she had made fun of him for having had a DUI were in quotes. The inference that is drawn from that is that he stated those things. Well, again, going to Justice Harris's question, was that evidence before the court? Did anyone testify to this or stipulation? I mean, we're talking about allegations and pleadings, counsel. How is that something for the trial court or this court to consider? Your Honor, if this is- I understand what you're saying, and it does not change my argument. If this is not in evidence, then there is no information about the tipster's name. There's no information that the tipster actually called 911. So that presumption of reliability cannot be given- Well, we have the dispatcher saying, I got this call from someone. Your Honor, there's no testimony that the dispatcher says, I got a tip or someone called 911, gave me their name. We don't know that this tipster- Well, but we know that Sterlick, the officer said, dispatch called and told me the following, that there was this intoxicated person in this car with two kids. Any dispute about that? That's correct, but the presumed- What reason is there on this record to think that there is some bias or inaccuracy in that caller? Are you saying that on the record before us, there's a problem with that tip? It might've been just to create problems without justification for the defendant? Your Honor, no, beyond the defense's motion to suppress, no, there is nothing that indicates that. However, it's the defense's motion to suppress where the state gets the information that this tipster gave his name and literally called 911. That's where they're presuming reliability from. Otherwise, we have a situation where there is a vague- Well, actually, the state didn't present that evidence. So we don't have any evidence on the record that the tipster gave his name. We just have a 911 call, which is what we had in these other cases. And in Hanson, we don't have any interaction. We don't know anything about the relationship of the kid or his mother who called in about the car doing donuts on the highway. Was that not worthy of belief for some reason? Well, Your Honor, there's two possibilities. The tipster called 911 directly or called from a payphone. The reason why there's presumed reliability from someone calling 911 directly is because they're not anonymous. We don't know if the tipster in this case was anonymous or not unless we use the defense's motion to suppress. And it emphasizes my argument if we are putting aside the defense's motion to suppress and stating purely that the information that the officer received from dispatch is the information she had to go off of. That information is not enough. The tip is not reliable enough to supply reasonable suspicion on its own, and the officer's observations were also not enough to supply reasonable suspicion, which is why the trial court found- The trial court may have said that the stop line issue was a close call, but ultimately, the trial court found that the officer's observations were not enough to supply reasonable suspicion. So we have- Thank you, Zainer. You are out of time. We're well past, but I do want to make sure that my colleagues have asked the questions that they wish to ask. And so, thank you. Thank you both, counsel. The court will take the case under advisement and will issue a written decision.